GI NAM LEE (State Bar No. 204561)
Ginam.Lee@TrustableLaw.com
TRUSTABLE LAW PC
8350 Wilshire Blvd., #210
Beverly Hills, CA 90211
Telephone: (323) 879-9300

Attorney for Plaintiff and Counter-Defendant

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| MASANGSOFT INC., a Korean corporation,<br><br>Plaintiff,<br><br>vs.<br><br>JAYCE AZUA aka JOSECARLOS AZUA, an individual; GOSU GAMES INC., a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>Defendants.<br><br>AND COUNTER-CLAIMS | Case No. **2:24-cv-10750-CBM-PVC**<br><br>**PLAINTIFF MASANGSOFT INC.'S MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>*[Filed concurrently with Declaration of Woong Choi; Declaration of Gi Nam Lee; Evidentiary Objections; [PROPOSED] Order Sustaining Evidentiary Objections; [PROPOSED] Order Denying Motion]*<br><br>Date: August 5, 2025<br>Time: 10:00 A.M.<br>Courtroom: 8D<br>Judge: Hon. Consuelo B. Marshall |

1
PLAINTIFF MASANGSOFT INC.'S MEMORANDUM IN
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

TRUSTABLE LAW PC
8350 WILSHIRE BLVD., SUITE 210
BEVERLY HILLS, CA 90211
323-879-9300
ADMIN@TRUSTABLELAW.COM

## TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................ 4

II. FACTUAL BACKGROUND ......................................................................... 6

   A. Masangsoft's Legitimate Acquisition of the Worldwide Rights to GunZ: The Duel: ............................................................................................................. 6

   B. Defendants Repeatedly Acknowledge Masangsoft's Ownership While Seeking a License: ............................................................................................. 7

   C. Defendants' Bad-Faith Campaign to Undermine Masangsoft's Title ............ 8

   D. Masangsoft's Lawful Enforcement of Its Intellectual Property ..................... 9

III. LEGAL STANDARD ..................................................................................... 9

IV. ARGUMENT ................................................................................................ 10

   A. Defendants Cannot Demonstrate a Likelihood of Success on the Merits. ............................................................................................................................10

      1. Masangsoft Owns Valid, Enforceable Copyright and Trademark Rights. ............................................................................................................................10

      2. Defendants Are Estopped From Challenging Masangsoft's Rights. ......... 11

      3. Defendants' Counterclaims of Fraud and Abuse Are Meritless. ............... 12

   B. Any Harm to Defendants Is Self-Inflicted and Not Irreparable. ................. 13

   C. The Balance of Hardships Tips Decidedly in Masangsoft's Favor. .......... 15

   D. The Public Interest Favors the Protection of Intellectual Property Rights. ............................................................................................................................15

V. CONCLUSION ............................................................................................. 16

2
PLAINTIFF MASANGSOFT INC.'S MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

**TRUSTABLE LAW PC**
8350 WILSHIRE BLVD., SUITE 210
BEVERLY HILLS, CA 90211
323-879-9300
ADMIN@TRUSTABLELAW.COM

# TABLE OF AUTHORITIES

**Cases**

*Acacia Media Techs. Corp. v. New Destiny Internet Grp., LLC*, 2007 WL 9724911, at *4 (C.D. Cal. Mar. 20, 2007) ................................................................... 11

*Arcsoft, Inc. v. Cyberlink Corp.*, 153 F.Supp.3d 1057, 1071 (2015) ........................ 14

*Bennett v. Isagenix International LLC*, 118 F.4th 1120, 1129 (2024) ..................... 14

*Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 829 (9th Cir. 1997) ........ 15

*Disney Enterprises, Inc. v. VidAngel, Inc.,* 869 F.3d 848, 866 (2017) ..................... 14

*E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1293 (9th Cir. 1992) ..... 11

*In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) ........................................... 12

*Johnson v. Macy*, 145 F.Supp.3d 907, 914 (2015) .................................................... 10

*Knight v. Richardson Bay Regional Agency*, 637 F.Supp.3d 789, 796 (2022) ........ 10

*Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008) ............................................ 9

**Statutes**

17 U.S.C. § 512(f) ...................................................................................................... 13

3
PLAINTIFF MASANGSOFT INC.'S MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

**TRUSTABLE LAW PC**
8350 WILSHIRE BLVD., SUITE 210
BEVERLY HILLS, CA 90211
323-879-9300
ADMIN@TRUSTABLELAW.COM

# MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR PRELIMINARY INJUNCTION

## I. INTRODUCTION

Defendants Jayce Azua and Gosu Games, Inc. ("Gosu") ask this Court to reward their brazen scheme of intellectual property theft. After spending months attempting to license or purchase the rights to the popular online game GunZ: The Duel ("GunZ" or "GTD") from its rightful owner, Plaintiff Masangsoft Inc. ("Masangsoft"), Defendants abruptly changed course. **(Declaration of Woong Choi ("Choi Decl."), ¶¶ 11-21, Ex. D)**. When Defendants' business proposals were declined, Defendants initiated a bad-faith campaign to seize the very intellectual property they had just acknowledged as Masangsoft's. They filed new applications for trademark registrations **(Id. ¶¶22-24, Ex. E; ¶¶26-30, Exs. H, I, J),** petitions to cancel Masangsoft's trademarks **(Id. ¶25, Ex. G)**, launched their own infringing version of GunZ on the world's largest digital game marketplace **(Complaint, Dkt. 1, ¶¶ 50-51)** and now seek an injunction to protect their illicit enterprise.

Defendants' Motion is a cynical attempt to weaponize the equitable power of this Court. Defendants are not good-faith actors being victimized by a dormant rights-holder; they are willful infringers who got caught. Their motion is predicated on a series of falsehoods and mischaracterizations that crumble under the weight of

4
PLAINTIFF MASANGSOFT INC.'S MEMORANDUM IN
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

**TRUSTABLE LAW PC**
8350 WILSHIRE BLVD., SUITE 210
BEVERLY HILLS, CA 90211
323-879-9300
ADMIN@TRUSTABLELAW.COM

their own emails and the sworn testimony of the man who sold the GunZ intellectual property to Masangsoft. The undisputed record shows:

First, Masangsoft is the legitimate, worldwide owner of all intellectual property rights in GunZ, including copyrights and trademarks, which it acquired from the game's original developer, MAIET Entertainment, Inc. ("MAIET") in 2015. This is not a matter of debate; it is a fact confirmed under penalty of perjury by MAIET's former CEO, Joongpil Cho. **[Choi Decl., ¶5, Ex. A (Declaration of Joongpil Cho ("J. Cho Decl."), ¶¶ 4-5, Ex. A)].**

Second, Defendants knew Masangsoft owned the rights. For months, Defendant Azua repeatedly emailed Masangsoft seeking to "acquire the IP officially," obtain a "license," and secure Masangsoft's "blessing" for their project. **(Choi Decl., ¶¶11-19, Ex. D)**. These are not the actions of a party who believes an intellectual property has been abandoned; they are the conclusive admissions of a would-be licensee.

Third, Defendants' claims of "irreparable harm" are entirely self-inflicted. Any injury they have suffered is the direct and foreseeable consequence of building a business on stolen property. The law does not protect the "goodwill" of an infringer or shield them from the consequences of their own misconduct.

Defendants have not come to this Court with clean hands. Despite their knowledge of Masangsoft's rights, they have attempted to pass off Masangsoft's trademarks as their own by filing for trademark registrations **(Id. ¶22-24, Ex. E;**

5
PLAINTIFF MASANGSOFT INC.'S MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

TRUSTABLE LAW PC
8350 WILSHIRE BLVD., SUITE 210
BEVERLY HILLS, CA 90211
323-879-9300
ADMIN@TRUSTABLELAW.COM

**¶26-30, Exs. H, I, J)**, and filing Petitions to Cancel Masangsoft's registered trademarks **(Id. ¶25, Ex. G)**.   Now, they seek to maintain a status quo of their own illegal making. Because Defendants can demonstrate neither a likelihood of success on the merits nor that the balance of hardships tips in their favor, the Motion for a Preliminary Injunction must be denied.

## II.   FACTUAL BACKGROUND

Defendants' motion relies on a carefully curated and misleading version of events, primarily sourced from the declaration of Defendant Azua which are subject to Masangsoft's evidentiary objections which are filed concurrently. The actual documentary evidence, including Defendants' own communications, tells a different story.

### A.   Masangsoft's Legitimate Acquisition of the Worldwide Rights to GunZ: The Duel:

In 2015, Masangsoft purchased all intellectual property rights to GunZ: The Duel and its sequel from the original developer, MAIET. **[Choi Decl. ¶¶3-5. Exh A. (J. Cho Decl. ¶¶ 4-5)**]. The transaction was not limited to trademarks, as Defendants falsely suggest. The "Assignment of Intellectual Property Agreement," executed by MAIET's then-CEO Joongpil Cho, unequivocally transferred to Masangsoft "worldwide and exclusive ownership, [of] all intellectual property rights to the Games, including copyrights, trademarks, publishing, transmission and

6
PLAINTIFF MASANGSOFT INC.'S MEMORANDUM IN
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

TRUSTABLE LAW PC
8350 WILSHIRE BLVD., SUITE 210
BEVERLY HILLS, CA  90211
323-879-9300
ADMIN@TRUSTABLELAW.COM

broadcasting rights (offline/online), source code, domains, images, music, and all other associated game assets." **(Id. at ¶ 5)**. Mr. Cho, the man who signed the deal, has confirmed these facts in a notarized declaration submitted with this Opposition. **(Id. at ¶5)**. Masangsoft is, and has been since 2015, the sole and exclusive owner of the GunZ franchise.

**B.     Defendants Repeatedly Acknowledge Masangsoft's Ownership While Seeking a License:**

In early 2024, long before this litigation, Defendant Azua began a persistent campaign to obtain a license from Masangsoft. His communications are replete with acknowledgments of Masangsoft's ownership.

\*    On February 9, 2024, Azua wrote to Masangsoft's counsel: "I wanted to reach out in regards to GunZ: The Duel…where we wanted to have you license us as an official server outside of South Korea. We are interested in acquiring the IP officially from you…" **(Choi Decl., Ex. D at Bates PLTFF-000139 to 000140).**

\*    On March 5, 2024, Azua wrote directly to Masangsoft's team leader, Woong Choi: "We are writing to express our interest in acquiring the intellectual property rights for 'GunZ: The Duel.'" **(Id. at PLTFF-000132)**. He again offered to explore "licensing arrangements enabling us to host an official…version of GunZ: The Duel." **(Id.).**

\*    On April 12, 2024, Azua followed up: "I wanted to follow up on the previous email I sent about acquiring or partnering with MASANGSOFT for GunZ:

7
PLAINTIFF MASANGSOFT INC.'S MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

TRUSTABLE LAW PC
8350 WILSHIRE BLVD., SUITE 210
BEVERLY HILLS, CA  90211
323-879-9300
ADMIN@TRUSTABLELAW.COM

The Duel licensing IP. A few things I want to reiterate we want to have the green light and blessing from you…" (**Id. at PLTFF-000051 to 000052;** Complaint, Dkt. 1, ¶ 34).

After months of discussions, the parties could not reach an agreement. Only then, on June 22, 2024, did Azua write, "Its unfortunate that we cant get your blessing…" ((**Id. at PLTFF-000038; Complaint, Dkt. 1, ¶ 37**). Having failed to secure a license, Defendants decided to simply take the property for themselves.

### C. Defendants' Bad-Faith Campaign to Undermine Masangsoft's Title

After negotiations failed, Defendants began a concerted effort to create a pretext for their infringement. Azua contacted MAIET's former CEO, Joongpil Cho, under the false guise of "writing a journalism article." (**Id., J. Cho Decl. ¶ 11**). Azua then pressured Mr. Cho to disavow the 2015 sale to Masangsoft, baselessly claiming he did "not believe that Masangsoft has done any legal purchase or copyright transfer." (**Id. at ¶ 12).** Mr. Cho flatly rejected Azua's overtures, confirming that "Masangsoft is the legal owner" and that he "sold to Masangsoft the rights to the Games about 9 years ago." (**Id. at ¶ 13).** Mr. Cho asked Azua to stop contacting him, but Azua persisted, demanding "proof" of the sale. (**Id. at ¶¶ 13-14).** Mr. Cho's declaration directly refutes Azua's sworn statement that Mr. Cho had "confirmed to me that trademark rights for the Mark were never assigned." **(Id.**

8
PLAINTIFF MASANGSOFT INC.'S MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

TRUSTABLE LAW PC
8350 WILSHIRE BLVD., SUITE 210
BEVERLY HILLS, CA 90211
323-879-9300
ADMIN@TRUSTABLELAW.COM

**At ¶¶ 9-10).** This demonstrates a clear pattern of bad faith and misrepresentation by Azua.

D.  **Masangsoft's Lawful Enforcement of Its Intellectual Property**

Contrary to Defendants' narrative of a dormant, absentee owner, Masangsoft has actively policed its intellectual property. When Defendants escalated their infringement from a private server to a high-profile launch on Steam, Masangsoft acted. It submitted a DMCA takedown notice to Valve based on its ownership of the game's copyright. (**Declaration of Gi Nam Lee ("Lee Decl."), ¶ 3. Ex. A; Complaint, Dkt. 1, ¶ 55**). This was not, as Defendants claim, a retaliatory act, but a standard and necessary step to protect its core asset from being misappropriated on the world's largest PC gaming platform. Masangsoft has taken similar action against other infringers, such as The Duel Brasil. **(Lee Decl., ¶4, Ex. B; Choi Decl., ¶37).** An intellectual property owner is not required to sue every infringer simultaneously to retain its rights; it is entitled to prioritize enforcement against the most significant threats, which is precisely what Masangsoft did here.

III.  **LEGAL STANDARD**

A party seeking a preliminary injunction must establish that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).

9
PLAINTIFF MASANGSOFT INC.'S MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

TRUSTABLE LAW PC
8350 WILSHIRE BLVD., SUITE 210
BEVERLY HILLS, CA  90211
323-879-9300
ADMIN@TRUSTABLELAW.COM

Failure to satisfy any one of these elements is fatal to the motion. The party seeking a preliminary injunction must prove each of the required elements. Courts have repeatedly held that the movant bears the burden of persuasion for all four factors. (*Knight v. Richardson Bay Regional Agency*, 637 F.Supp.3d 789, 796 (2022)).  The movant must meet this burden by a "clear showing," demonstrating that all prongs of the preliminary injunction test are satisfied. This standard underscores the rigorous nature of the burden placed on the party seeking the injunction (*Johnson v. Macy*, 145 F.Supp.3d 907, 914 (2015)). Here, Defendants fail on all four.

IV.   ARGUMENT

    A.   **Defendants Cannot Demonstrate a Likelihood of Success on the Merits.**

Defendants' entire motion rests on the faulty premise that Masangsoft's intellectual property rights are invalid or unenforceable. The evidence proves otherwise. Masangsoft is likely to prevail on its infringement claims, and Defendants' counterclaims are meritless.

    1.   **Masangsoft Owns Valid, Enforceable Copyright and Trademark Rights.**

Defendants' central argument—that Masangsoft abandoned its rights through inaction—is legally and factually baseless. First, Masangsoft is the undisputed

10
PLAINTIFF MASANGSOFT INC.'S MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

TRUSTABLE LAW PC
8350 WILSHIRE BLVD., SUITE 210
BEVERLY HILLS, CA  90211
323-879-9300
ADMIN@TRUSTABLELAW.COM

owner of the GunZ IP. The notarized declaration of MAIET's former CEO, Joongpil Cho, provides a clear and direct chain of title for all intellectual property, including the copyright, which Defendants conveniently ignore. (J. Cho Decl. ¶ 5).

Second, failure to sue dozens of small-scale, private servers scattered across the globe does not constitute abandonment. Abandonment requires an intent to relinquish rights, which cannot be inferred from a mere failure to pursue every possible infringer. 'A trademark owner is not required to act against every infringing use to preserve its rights.' *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1293 (9th Cir. 1992)]. Masangsoft's 2019 email stating it was "not interfering with private servers" (Azua Decl. ¶ 13, Ex. I) is not a legal forfeiture of its rights; it was a business communication reflecting enforcement priorities at that time. When Defendants attempted a major commercial launch on Steam, Masangsoft acted to protect its rights, as it is entitled to do.

### 2. Defendants Are Estopped From Challenging Masangsoft's Rights.

Even if there were any doubt about Masangsoft's ownership, Defendants are equitably estopped from challenging it. A party that seeks a license to use an intellectual property implicitly acknowledges the validity of that property. 'A prospective licensee is estopped from later challenging the validity of the intellectual property it sought to license.' *Acacia Media Techs. Corp. v. New Destiny Internet Grp., LLC*, 2007 WL 9724911, at *4 (C.D. Cal. Mar. 20, 2007). For

11
PLAINTIFF MASANGSOFT INC.'S MEMORANDUM IN
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

**TRUSTABLE LAW PC**
8350 WILSHIRE BLVD., SUITE 210
BEVERLY HILLS, CA 90211
323-879-9300
ADMIN@TRUSTABLELAW.COM

months, Defendant Azua, on behalf of Gosu, repeatedly sought to "acquire the IP officially" from Masangsoft and obtain its "blessing." **(Choi Decl., Ex. D).** They cannot now, with a straight face, argue that the IP they tried to license was abandoned or invalid all along. Their own words defeat their claims.

### 3. Defendants' Counterclaims of Fraud and Abuse Are Meritless.

Desperate to invent a defense, Defendants accuse Masangsoft and its predecessor of committing fraud on the USPTO. These allegations distort the facts and misapply the law. Fraud on the USPTO requires a showing of a knowing, false, material representation made with the specific intent to deceive the agency. *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009). Defendants can prove none of this.

The specimens in question—a screenshot from a Brazilian server in 2014 or a screenshot of Defendants' own infringing website in 2018—do not demonstrate an intent to deceive. At worst, they reflect a foreign company's misunderstanding or inadvertent error for U.S. specimens of use. Such a mistake is not fraud. *Id. at 1245* (holding that a false statement that is the result of a misunderstanding or inadvertence is not fraudulent). Likewise, using the GunZ mark on a webpage for its sequel, GunZ 2, is a legitimate branding decision for a franchise, not a fabrication.

12
PLAINTIFF MASANGSOFT INC.'S MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

**TRUSTABLE LAW PC**
8350 WILSHIRE BLVD., SUITE 210
BEVERLY HILLS, CA  90211
323-879-9300
ADMIN@TRUSTABLELAW.COM

Defendants' claims for DMCA abuse and RICO violations are similarly frivolous. Masangsoft's DMCA notice was based on a good-faith belief in its copyright ownership, a belief now confirmed by the Cho Declaration. The inclusion of a reference to trademarks is, at most, harmless surplusage, not a "knowing material misrepresentation" under 17 U.S.C. § 512(f). The RICO claim is a transparent and sanctionable attempt to escalate a standard IP dispute into a federal racketeering case. It should be given no weight.

**B.**     **Any Harm to Defendants Is Self-Inflicted and Not Irreparable.**

Defendants cry irreparable harm, but any injury they face flows directly from their decision to build a business on infringing intellectual property. They knew Masangsoft owned the rights—they tried to license them. When that failed, they proceeded with their infringing launch on Steam anyway. The resulting takedown was not a surprise; it was a foreseeable consequence of their own actions. The law does not recognize self-inflicted wounds as irreparable harm. The Ninth Circuit has explicitly stated that harm that is "largely self-inflicted" severely undermines a claim for equitable relief. In *Bennett v. Isagenix International LLC*, the court noted that a party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted. The court reasoned that relinquishing an adequate legal remedy, thereby creating irreparable harm, does not suffice for purposes of obtaining a preliminary injunction (*Bennett v. Isagenix International LLC*, 118

13
PLAINTIFF MASANGSOFT INC.'S MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

TRUSTABLE LAW PC
8350 WILSHIRE BLVD., SUITE 210
BEVERLY HILLS, CA 90211
323-879-9300
ADMIN@TRUSTABLELAW.COM

F.4th 1120, 1129 (2024)). This aligns with broader equitable principles that require the movant to demonstrate harm that is not of their own making.

Furthermore, Defendants' alleged harms—lost revenue and goodwill—are not irreparable. Lost profits are the classic form of monetary damages. And any "goodwill" they have is built upon Masangsoft's famous mark and game, which they have no right to use. They cannot be irreparably harmed by the loss of something they never should have had in the first place. In *Disney Enterprises, Inc. v. VidAngel, Inc.*, the Ninth Circuit emphasized that harm caused by illegal conduct does not merit significant equitable protection. The court balanced the equities and concluded that lost profits from activities likely to be infringing merit little consideration in the context of preliminary injunctions *Disney Enterprises, Inc. v. VidAngel, Inc.,* 869 F.3d 848, 866 (2017)). This reinforces the principle that harm arising from the movant's own actions, particularly unlawful ones, does not justify injunctive relief.

Additionally, in *Arcsoft, Inc. v. Cyberlink Corp*., the court reiterated that the mere "possibility" of irreparable harm is insufficient to justify a preliminary injunction. The harm must be likely and immediate, and speculative injury cannot form the basis for injunctive relief (*Arcsoft, Inc. v. Cyberlink Corp*., 153 F.Supp.3d 1057, 1071 (2015). This principle further limits the availability of preliminary injunctions in cases where the harm is self-inflicted or speculative.

14

PLAINTIFF MASANGSOFT INC.'S MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

TRUSTABLE LAW PC
8350 WILSHIRE BLVD., SUITE 210
BEVERLY HILLS, CA  90211
323-879-9300
ADMIN@TRUSTABLELAW.COM

### C. The Balance of Hardships Tips Decidedly in Masangsoft's Favor.

The balance of equities weighs heavily in favor of Masangsoft. The hardship to Masangsoft is the ongoing theft and erosion of its core intellectual property, an asset it legitimately purchased and owns. If an injunction is granted, Masangsoft will be forced to stand by while an infringer commercializes its property on a massive scale, diminishing its value and creating permanent market confusion. **(Choi Decl., ¶38).**

The hardship to Defendants, by contrast, is being prevented from continuing to profit from their infringement. This is not a hardship the law recognizes. *Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 829 (9th Cir. 1997) (injunction warranted where infringement was deliberate). Equity does not protect the ill-gotten gains of a thief.

### D. The Public Interest Favors the Protection of Intellectual Property Rights.

The public has a profound interest in upholding copyright and trademark laws. These laws encourage creativity and investment by ensuring that creators and owners can control and benefit from their work. Granting Defendants' motion would do the opposite: it would signal that infringers can operate with impunity, and that a legitimate owner's rights can be extinguished through a campaign of delay and deception. It would also undermine the DMCA by punishing a rights-

15
PLAINTIFF MASANGSOFT INC.'S MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

TRUSTABLE LAW PC
8350 WILSHIRE BLVD., SUITE 210
BEVERLY HILLS, CA  90211
323-879-9300
ADMIN@TRUSTABLELAW.COM

holder for using the very process Congress created to protect them. The public interest is served by denying the injunction and allowing this case to proceed on the merits, where Masangsoft's valid rights will be vindicated.

## V. CONCLUSION

For the foregoing reasons, Plaintiff Masangsoft Inc. respectfully requests that the Court deny Defendants' Motion for a Preliminary Injunction in its entirety.

July 15, 2025                    Trustable Law, P.C.

                                 By: /s/ Gi Nam Lee
                                 Gi Nam Lee
                                 Attorneys for Plaintiff and Counter-Defendants

16
PLAINTIFF MASANGSOFT INC.'S MEMORANDUM IN
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

**TRUSTABLE LAW PC**
8350 WILSHIRE BLVD., SUITE 210
BEVERLY HILLS, CA  90211
323-879-9300
ADMIN@TRUSTABLELAW.COM